Livermore et al. *v.* Johnson.

## WILLIAM H. LIVERMORE et al. *v.* JOHN JOHNSON.

Where notes are transferred by C. to J., by whom they are received with a full knowledge of the rights of F. and of the character in which the notes were held by C., that he was but agent, and was appropriating the property of its principal to his (C.'s) own use, by which he was to be benefited:— *Held*, that this was sufficient to stamp the transaction with the character of fraud.

The rule that a party who has an opportunity of detecting alleged fraud in transactions, is to be charged with a knowledge of it, does not apply where the party resides in a distant State, and had appointed an agent here to attend to his business, by whom the fraud was perpetrated.

Where a bill upon its face shows that frauds charged in it were not discovered by the complainants until within six years before filing of the bill, a distinct and specific averment to that effect is not required.

The rule is, that the equitable circumstances charged in a bill which will prevent the operation of the statute of limitations, must be denied by the answer as well as by the plea; and the answer in support of the plea must be full and clear, and contain a precise and particular denial of the charge. *Held*, that without such a denial and proof to sustain it, the charges in the bill will avoid the statute.

Where a bill charges fraud, and that the fraud was not discovered till within six years before filing the bill, the statute is not a good plea, unless the defendant deny the fraud, or avers that the fraud, if any, was discovered six years before filing the bill.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

The facts of the case will be found sufficiently stated in the opinion of the court, and in the points made by appellant's counsel.

*E. C. Wilkinson* for appellants.

To the bill in this cause the defendant filed a plea of the act of limitations, which the chancellor sustained, on the ground that the matter set up in the bill raised a resulting trust from defendant for complainants, and that such a trust is barred by limitation. This decree was ordered by chancellor Cocke, and was signed by his successor, and the order is for a decree sustaining the plea.

*Livermore et al. v. Johnson.*

That the statute of limitations, or rather the equitable bar shown from analogy to it, may be effectually opposed to the operation of a claim growing out of a resulting, or any other sort of constructive trust, is not denied. But the chancellor did not perceive that the bill makes out something more than a case of trust. The bill charges that Johnson got possession of the notes that were in the possession of Carman, by a course of conduct which would fix fraud upon him, and it moreover directly charges fraud upon him and collusion with Carman. It is apparent from the statements of the bill, that " this fraud was committed under circumstances which kept concealed from the complainants a knowledge of the fact, and thus delayed the operation of their right; " and in such a state of facts, it is clear enough that no lapse of time can bar the claim. See the question examined in chap. 18 of Angell on Limitations, beginning on page 188. Also, 2 Story's Equity, 738. " Courts of equity," says Judge Story, " will not allow such a bar to prevail where it would be in furtherance of a manifest injustice." Also in Lewin on Trusts, p. 617, the same doctrine is held.

This cause is not without a precedent in the chancery of this State. Some years ago a case quite like this grew out of the same trust and involved the same parties, with the addition of some others. It is reported in Freeman, R. 408. Chancellor Buckner there treats Johnson's conduct as fraudulent throughout, and decreed for the complainants. Every thing goes to show that the complainants could have had but slender opportunities of discovering this fraud. This Carman acted as their agent in the management of property which they inherited and never saw, and they were residents of a distant State.

It appears that elsewhere than in Mississippi, the objection of fraud to the plea of limitations must be set up by way of replication; but it will be recollected that a replication is unknown to the chancery court of our State. See the statutes, and the 4th rule of the chancery court; and this rule cannot apply in this case, because the fraud is distinctly charged in the bill, and so an issue is made by the bill and plea. Besides, to nearly all the bill there is a demurrer, and in this manner the issue is unquestionably raised.

Livermore et al. *v.* Johnson.

The very least, however, that the court could have properly done, would have been, after ruling for the defendant, to have allowed the complainants to amend their bill. I think, therefore, that the cause is with me upon the merits.

There was, however, a singular irregularity committed in this cause. It appears to have been disposed of without ever having been set for a hearing. This, in the condition of the pleadings, I think was wrong. See the 5th sect. of the 12th rule. These rules are established by the court by authority of law, and the court is bound by them. The setting a cause for hearing is an important step. Much may be gained or lost by it. For example, a complainant by setting his cause for hearing upon the coming in of the answer, admits the affirmative statement of the answer, and is not allowed to disprove them. This was repeatedly ruled by Judge Buckner.

The step of setting down a cause for hearing, is the notice to your adversary to attend at the hearing; and to take up, consider, and dispose of a cause before it is so set, is irregular, and is in this case, an irregularity involving so much injustice and injury to the complainants, that the appellate court will correct it.

No counsel for appellee.

Mr. Chief Justice SMITH delivered the opinion of the court.

This bill was filed in the superior court of chancery by William W. Livermore, executor of Alma Post, deceased, Charles A. Floyd, Allison Post and his wife Elizabeth, the heirs at law of Richard F. Floyd, deceased.

The bill alleged that the said Richard F. Floyd, who died intestate, was at the time of his death the owner of lands situated in Mississippi; that after his death his heirs at law appointed John J. Carman their agent and attorney in fact to sell and dispose of those lands, and that Carman, as such agent and attorney, sold and conveyed the lands to sundry persons. Amongst these, he sold a tract of land to Parham Buford for three thousand dollars, and took his note for that amount. He sold to Levi Manas another tract of land, and took his note to

secure the purchase-money. Other lands belonging to Floyd's heirs were likewise sold by Carman to divers persons unknown to complainants, from whom he took notes to secure the purchase-money.

The bill further alleged, that the notes received from Buford and Manas, together with the notes given by the unknown purchasers of the lands, were transferred by Carman to the defendant. That Carman, at the date of the transfer, was greatly embarrassed, and in failing circumstances; and within a short time afterwards removed from this State, and has since died hopelessly insolvent. That the notes were not transferred in the ordinary course of trade, but were delivered to Johnson to indemnify and secure him against liabilities previously incurred as surety for Carman; and that when Johnson received the notes from Carman, he well knew that they were not Carman's property, but that they belonged to the complainants. Johnson collected the money due upon the notes of Buford and Manas, and applied it to the payment of the liabilities of Carman, for which he was bound as surety, or to his individual use. The defendant Johnson also collected money upon the notes given by the unknown purchasers, which was applied in the same way. It was further alleged, that the transfer of all of the said notes was made by Carman in violation of his duties as the agent of Floyd's heirs, and in combination with the defendant, for the purpose of defrauding the said heirs out of their just rights.

The defendant answered; and in his answer denied that he had knowledge of the fact, as alleged in the bill, that Carman had been appointed their agent by the heirs of Floyd. He admitted that Carman, at the time alleged, was greatly embarrassed, and in failing circumstances; that he was liable for Carman, as surety, for a large amount, who, in order to indemnify defendant against his said liability, transferred to him the promissory notes of divers persons; that amongst them was the note of Parham Buford, for one thousand and sixty dollars, made payable to Carman, as the agent of Charles A. Floyd; and also a note made by Levi Manas, the contents of which were collected by defendant, and applied by him to the pay-

ment of the debts of Carman. He denies that when he received the said notes from Carman he knew that any of them had been given for lands which belonged to Floyd's heirs, and had been sold by Carman as their agent; but believed them to be his property; and that he received them as such in good faith, and for the purpose before stated.

The defendant relied upon the statute bar of six years, and prayed that his answer might be taken and held as a plea of the statute of limitation, averring "that any supposed promise ever made by him to complainants, as set forth in their bill, and the supposed cause of action therein referred to, accrued against him more than six years before the commencement of their said suit."

The plea was sustained, and a decree entered dismissing the bill; from which an appeal was taken to this court.

According to these allegations of the bill, the notes in question were transferred to the defendant, not in the usual course of trade, but as a security against a preëxisting liability. He paid no new consideration, nor did he release any security which he then held. He received them with full knowledge that they were the property of the complainants, and not the property of his assignor. Hence, according to the settled doctrine of this court, he is not to be regarded in the light of a *bonâ fide* purchaser for a valuable consideration. Unquestionably, he received the notes as the trustee of the complainants, and is bound to account for them or their proceeds, as such. But the trust was not a direct, but an implied one, as the notes were not transferred to him with an express or implied understanding that he was to hold them for the use of the complainants. *Decouche* v. *Savatin*, 3 J. Ch. R. 216. It was, therefore, one of those trusts which are admitted to be within the operation of the statute of limitations.

But it is contended that this is not only a case of implied or constructive trust, but that it is accompanied by fraud committed under circumstances which were calculated to keep concealed from the complainants a knowledge of the transaction, and which in fact did delay the assertion of their rights by the complainants beyond the time limited by the statute.

It has long been the settled rule in England, that where a party has been kept in ignorance of his rights by the fraud of the person sought to be charged, the statute shall not begin to run until after the fraud has been discovered.  The reason assigned, why the statute bar will not be applied in a court of equity in cases of that character is, that it would be a violation of the principles of natural justice to permit a party to avail himself of the lapse of time as a bar to the suit, who has by fraud kept concealed the rights of the complainant, and has thereby delayed him in the assertion of those rights.  *Howain* v. *Lord Annesley*, 2 Sch. & Lef. R. 634.  Such is without doubt the doctrine of courts of equity in this country.  Story, Eq. 738; Lewin on Trustees, 617; *Costar* v. *Murray*, 5 J. Ch. R. 532. And such unquestionably is the law in this country.  Angell on Lim. (and the cases cited), p. 188.

The bill contains an express allegation that the notes in question were transferred to the defendant, by whom they were received, with full knowledge of the rights of the complainants, and of the character in which they were held by the party who transferred them.  Taking this allegation to be true, the defendant knew that the agent was appropriating the property of his principals to his own use, and by which appropriation he was to be benefited.  This of itself was sufficient to stamp the transaction with the character of fraud; besides there is a direct allegation by which he was charged with combination with the agent to defraud the heirs out of their just rights.

The complainants were residents of a distant State, and had appointed Carman their agent to sell and dispose of a large landed estate, consisting of many separate tracts of land.  It is manifest they reposed confidence in him as a man of integrity and fair dealing, otherwise they would not have trusted him as their agent.  The transfer of the notes taken for a sale of the lands from the numerous purchasers was an act easily concealed; and in consequence of the position of the parties, if fraud were intended, not likely to come to the knowledge of the complainants.  Under such circumstances, they had but slender opportunities of detecting the alleged frauds.  The rule, that a party who had an opportunity of detecting alleged frauds.

Livermore et al. *v.* Johnson.

in transactions of this character, is to be charged with a knowledge of them, therefore, does not apply to this case.

It was alleged that lands were sold to sundry persons who were unknown to the complainants; that notes were taken from these purchasers and transferred by the agent to the defendant; and that the money secured by these notes was collected by him and applied to his own purposes, or to the payment of Carman's debts, for which he was responsible. These statements showed, very clearly, if true, and they are to be taken as true for the purposes of our inquiry, that complainants were at the time of filing the bill ignorant of the names of the several vendees of the land, and the amounts which they owed, and were uninformed as to the date of the payments which were made by them to the defendant. The latter are important facts, viewed in connection with the plea of the statute; as it is manifest that the right of the complainants to sue for and recover, as against the defendant, did not arise till the money was collected. It cannot be maintained, however, that these statements are to be considered an express averment that the frauds charged were not discovered by the complainants till within six years before filing the bill. But we apprehend that a distinct and specific averment to that effect is not required where the bill, upon its face, shows that fact. In the case before us it is shown substantially, though not by a direct and specific averment, that the fraud connected with the receipt and appropriation of the proceeds of these notes was not known to the complainants till within six years before the commencement of the suit. For most assuredly, an allegation that a party was ignorant or unapprised of a particular fact at a given date, would be held tantamount to an averment that he was not acquainted with it six years before.

In cases in which a plea of the statute is interposed, the rule, as laid down by Chancellor Kent in *Goodrich* v. *Pendleton*, 3 J. Ch. R. 385, is, that the equitable circumstances charged in the bill, and which will prevent the operation of the statute, must be denied by the answer as well as by the plea; and the answer in support of the plea must be full and clear, and contain a precise and particular denial of the charges, or it will not be effective to sustain the plea.

It will scarcely be denied, that the facts and circumstances alleged in the bill, unless denied and disproved, would, upon the settled doctrines of a court of equity, avoid the statute. If, therefore, a plea of the statute is bad, unless accompanied with an answer supporting it, by a particular denial of the circumstances charged in the bill, and which form an equitable bar to the statute, it will require but little argument to show that the plea should have been overruled.

It was averred in the answer, that defendant received the notes from Carman in good faith, not knowing or suspecting any of them to belong to any one except the said Carman. This is the only averment which rebuts or denies, in any respect, the charges of fraud in the bill; and it will not be maintained that this was an express or specific denial of the same. Nor do we think, under the circumstances of the case, that it should be considered a substantial denial of the charges of fraud.

The aggregate amount of the notes transferred by Carman to defendant, as it appears from the admissions in the answer, exceeded the sum of forty thousand dollars, and the amount of defendant's liabilities for Carman is alleged to be over thirteen thousand dollars. Hence if the notes were all paid a large balance would remain in the defendant's hands, after paying off Carman's debts for which he was responsible. Nothing is said in the answer as to what disposition was to be made of this balance, if it should in fact exist. Carman was greatly embarrassed, in fact insolvent. Was the balance to be repaid to Carman, or to be held in secret trust for him, in order to save it from his creditors? It may be true as stated, that defendant believed the notes to be Carman's property when the transfer was made; and was ignorant of any demand which the complainants held against him. It may be also true that defendant received the notes in good faith as an indemnity, yet these statements are not inconsistent with the assumption that there was a collusive understanding between the parties, that the defendant was to hold the balance, after paying off his liabilities, in order to secure it from the demands of Carman's creditors. If this supposition were true in point of fact, it would certainly constitute one of the grounds upon which courts of equity refuse to allow the

statute to be set up as a defence. For so far as the effects of the transaction upon the rights of the complainants were concerned, they would not be different if the answer had admitted, in the most unqualified terms, the allegation of fraud. In either case the complainants would be delayed in the assertion of their rights by an improper and fraudulent act; and we apprehend that it could make no difference, either as it respects the rights of the complainants or defendant, whether the act was committed with direct reference to the complainants or any one else. At any rate they were entitled to a direct and specific denial or admission of the charges. This was not done; and the defendant not having averred in the plea, nor alleged in the answer, that the complainants had knowledge of the fraud six years before the institution of the suit, it only remains to be ascertained whether, under these circumstances, he was not precluded from insisting on the statute as a defence to the bill.

The rule on this subject is well settled. "Where the bill charges a fraud, and that the fraud was not discovered till within six years before filing the bill, the statute is not a good plea unless the defendant deny the fraud, or aver that the fraud, if any, was discovered six years before filing the bill." Mitf. Ch. Plead. 269; *Goodrich* v. *Pendleton*, 3 J. Ch. R. 385; Lewin on Trustees, 617. It follows, therefore, that the plea was bad, and should not have been sustained.

Let the decree be reversed. Decree entered in this court overruling the plea, and the cause remanded to the court below for further proceedings.