### John H. Long v. Stella Long, Administratrix.

#### Gen. No. 4,708.

1. VERDICT—*when not disturbed after two concurring verdicts.* A verdict based upon conflicting evidence will not be disturbed unless it is manifestly against the weight of the evidence, and this is especially true where two juries have passed upon the case and each has found the same way.

2. INSTRUCTION—*should not specify witness by name.* Instructions are properly refused which direct the attention of the jury to particular witnesses, specifying them by name.

3. INSTRUCTIONS—*when should not ignore issues.* An instruction which concludes with a direction should not ignore any issue in the cause.

4. RECEIPT—*upon whom burden of explaining rests.* The burden to explain a receipt is upon the party who gave it.

Contested claim in court of probate. Appeal from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906. Rehearing denied April 9, 1907.

S. B. POOLE and H. A. BROOKS, for appellant.

C. H. WOOSTER and H. EDWARDS, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

John H. Long was the father of Charles F. Long, who died February 3, 1905. Letters of administration

on his estate were granted by the Probate Court of Lee county to Stella Long, his widow. John H. Long, on April 17th, filed a claim amounting to $16,500 against his son's estate, and on July 19, 1905, filed an amended account. Upon a trial in the Probate Court the claim was disallowed, and the matter was appealed to the Circuit Court, where, upon a trial, the jury found against the claim a second time, and claimant brings the matter to this court by appeal.

The total of the items of the amended claim amount to $21,700, but it is only insisted that there is $13,978 due. Charles F. Long was a merchant, engaged in the grocery business from 1883, doing business in a building owned by his father, until 1895, when he bought the building from his father. In 1903 Charles F. Long became mentally deranged and was taken to a hospital for treatment, and John H. Long, acting for his son, sold the stock and assisted in collecting the notes and accounts belonging to the son. In the spring of 1904 Charles F. Long returned home somewhat improved, but in the fall of 1904 was again stricken and grew worse until he died.

The store books of Charles F. Long, which contained an account kept by Charles F. Long with his father, beginning May 7, 1895, and ending August 28, 1903, were introduced in evidence by claimant. This account shows a running series of small debits and credits during all that time, such as would naturally occur in a store account. The items in the account filed by appellant are all large; that is from one thousand to three thousand dollars, such as "to cash from sale of cattle to S. D. Frost about Feb. 26, 1896, owned and sold by John H. Long, and money collected by C. F. Long, $2,000.00;" "September, 1899, to money loaned Guy Wasson by C. F. Long for John H. Long, and collected by C. F. Long, and retained by him, about $2,200.00;" "To money advanced and loaned Jan. 1, 1898, $1,000.00." These items show the character of the items making up this claim. Most of the transac-

tions involved in the claim are for moneys advanced
by claimant to the deceased, and occurred more than
five years before the death of the son. The pleadings
were oral, and the five years' Statute of Limitations
was pleaded. None of the items in the claim appears
on the books of account of Charles F. Long, and John
H. Long did not produce any books whatever. The
question is raised whether the store account kept by
Charles F. Long, showing the mutual accounts from
1895 to 1903, prevents the running of the Statute of
Limitations, as to these large items not on the books.
It is not necessary for this court to pass upon the ques-
tion whether the Statute of Limitations applied to
these items, for the reason the Circuit Court seems to
have held they were not within the statute, by refusing
all instructions asked for the estate upon that ques-
tion, and the trial court having held in favor of ap-
pellant, there is no ruling against him on which he can
assign error.

No error in regard to the admission or rejection of
evidence is pointed out or argued, and therefore there
is no question of that kind for us to review. The ques-
tion most strenuously insisted upon is, that the ver-
dict is not sustained by the evidence, which is very
voluminous.

Among the items of the claim of appellant is one of
$1,600 for rent collected by C. F. Long of Wright Bros.,
from May 12, 1899, to September 8, 1904, at $25 per
month. It is clearly proved that $105 of the rents never
went into the hands of the deceased, but was used in re-
pairing the building; that for over a year prior to Sep-
tember 8, 1904, C. F. Long was not attending to any
business, but part of the time was in a hospital, and
that during that time claimant was assisting in look-
ing after the closing up of any business that C. F. Long
had; that many of the drafts for rent were payable to
J. H. Long, and that he was the last indorser thereon,
showing that he had collected them. Of the drafts
comprising some of the larger items, some of them

were indorsed by John H. Long and then by Linda Long; it is not shown that Charles received the money on them., The fact that such character of claims were presented and attempted to be collected from the estate of a dead son, when the estate was able to show that the father had had the money, tended strongly to cast a doubt on the entire claim. Eight witnesses testified as to statements of John H. Long made at different times from the spring of 1902 to July, 1904, regarding the business matters of himself and son, wherein John H. Long said to various witnesses, "that he and Charlie kept an open account and at the end of each year settled up;" "when the stock in the store is disposed of he will owe no man a dollar;" "Charlie does not owe any man a cent in the world;" "Charlie and him had just settled up in full and he didn't owe Charlie a cent and Charlie didn't owe him a cent; that this was the first time they had had a settlement;" "that Charlie had made lots of money; that he owed nobody a cent;" "that they had settled up between themselves; he said 'Charlie does not owe me a penny and I don't owe Charlie a penny.' He said 'he didn't owe his son, and his son didn't owe him.' " A receipt also was offered in evidence dated March 1, 1904: "Received of Mr. Chas. F. Long, payment in full of all accounts to date I have against Chas. F. Long," signed by appellant. The evidence as to whether Charles F. Long owed appellant anything, was irreconcilable and very conflicting, and we cannot say that the verdict was so clearly against the evidence that upon another trial the verdict would probably be the other way. A verdict based upon conflicting evidence will not be disturbed unless it is manifestly against the weight of the evidence. Chicago & J. E. Ry. v. Herbert, 115 Ill. App. 248.

After two concurrent verdicts, there being evidence to support them, we hold the trial court rightly overruled the motion to set aside the verdict, on the alleged reason that it is not supported by the evidence.

Long v. Long.

Error is assigned on the refusal to give eight instructions that were asked by appellant. The third named some of the witnesses proving admissions of appellant, and attempted to limit the effect of the admission, and omits the names of more witnesses than it points out, who testified in the same line. It was erroneous and misleading in particularizing as to certain witnesses by name, and in not being a general instruction applicable to all evidence on that question. The fourth, sixth, seventh and tenth instructions in effect direct a verdict on certain facts, ignoring the question of settlement upon which question there was evidence, and the giving of them would have been erroneous. Pardridge v. Cutler, 168 Ill. 504; Gorrell v. Payson, 170 Ill. 213. Number four, so far as it stated the law correctly, was given in appellant's number one. Number five also assumed that the deceased had received the sums claimed. The defense having produced in evidence a receipt in full, signed by appellant, the burden of explaining the receipt and showing there was a mistake in giving it, was upon appellant. Vigus v. O'Bannon, 118 Ill. 334. The eighth and ninth instructions contained this proposition: "Proof of payment or settlement is not sufficient where the evidence may be said to leave the question of payment or settlement in doubt." The instruction would require a defendant not only to prove payment by a preponderance of the evidence, but to produce evidence which would convince the jury beyond a doubt. There might be a doubt, or even a serious doubt, in the minds of the jury as to whether payment or settlement had been made, and yet they might believe from the preponderance of the evidence, that payment had been made. There was no error in refusing these instructions.

Finding no error in the case, the judgment will be affirmed.

*Affirmed.*