In re Estate of Frederick Rhoads, deceased. Appeal of S. Oliver Rhoads.

*Receipt—Evidence—Conclusiveness of receipt.*

While a receipt in full is not conclusive, it is always prima facie evidence of a settlement, and cannot be set aside except for weighty reasons, such as fraud, accident or mistake, and such causes for disregarding it must be made to appear distinctly.

*Receipt—Evidence—Decedents' estates—Promissory note.*

Where a father gave his son a receipt " in full for all claims from him," and after the father's death a promissory note of the son antedating the receipt is found among the father's effects, and at the trial of the case founded on the note the son produces the receipt against the note, the burden of proof is upon the representative of the decedent to show that the receipt did not apply to the note.

A decedent's estate contained a note against his son for $1,000, of a date prior to a receipt held by the son for $700, "in full for all claims from him." There was evidence that the father had made a large profit out of land conveyed to him by his son, and had afterwards repeatedly declared that he would make it right with the son; that he had said that he was going to give his son $1,000; that his son owed him some, and he was going to make it right with him; that he had loaned his son money, and had taken his property to help him out of a financial difficulty arising from his going bail for his brother, and he had left it open for him to redeem the property at any time. Testator's widow testified that the son had admitted that he still owed the note, but this was denied by the son. *Held*, that this evidence was not sufficient to overcome the presumption of payment arising from the receipt.

Argued Nov. 9, 1898. Appeal, No. 185, Oct. T., 1898, by S. Oliver Rhoads, from decree of O. C. Allegheny Co., Dec. T., 1896, No. 63, in dismissing petition to reopen an adjudication. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition to reopen adjudication.

The petition of the executors set forth that they were not present at the audit, and it prayed that the adjudication should be opened so that an item of $1,000, being a note of S. Oliver Rhoads to decedent, should be stricken from the debit side of the account, and should not be charged as a payment against S. Oliver Rhoads.

Mary Large and Charlotte Fairbank, legatees, denied that the note had been either paid or released, and alleged that it was still due the estate. The court dismissed the petition.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*William H. Sponsler,* for appellant.—When Frederick Rhoads gave his son, on October 1, 1894, a receipt for $700, which he

said was "in full of all claims from him," it has all the force the law gives such an acquittance, but the presumption of the law is enforced by the facts of the case : Harris v. Hay, 111 Pa. 565; Keim v. Kaufman, 15 Pa. C. C. R. 541.

*J. G. Silveus*, with him *W. P. Carter*, for appellees.

OPINION BY MR. JUSTICE GREEN, January 3, 1899:

The receipt held by the appellant against the decedent is in the following words and figures :

"Oct. 1st. 1894.

"Received of S. Oliver Rhoads Seven hundred Dollars in full for all claims from him.

"FREDERICK RHOADS."

Of course it must be assumed that the receipt was given for some purpose, and that it was not a mere meaningless paper. As Frederick Rhoads is dead and S. Oliver Rhoads is incompetent as a witness, and no one was examined who was present when the receipt was given, we must ascertain the legal effect of such a paper when given in evidence without explanatory testimony as to what took place when it was executed and delivered. Even receipts in full are not conclusive and are open to explanation, but where there is no explanatory testimony, they have a defined legal meaning. In the case of Harris v. Hay, 111 Pa. 565, we said : " A receipt in full was produced in evidence which receipt was disregarded by the referee without any satisfactory finding of either law or fact in regard to it. While a receipt of this kind is not conclusive, yet it is always prima facie evidence of a settlement, and should only be set aside for weighty reasons, especially after a lapse of years, and the reasons should be fully and clearly stated. Fraud, accident or mistake would be sufficient to avoid such an instrument, but in such case the cause of avoidance should clearly appear." We thus have a clear and well-defined expression as to the legal effect of such an instrument, and it is authoritatively ruled that it cannot be set aside except for weighty reasons, such as fraud, accident or mistake, and such causes for disregarding them must be made to appear distinctly. Such receipts then are placed in the same category as other written

instruments which are made the depositories of the solemn agreements of contracting parties. The rules as to setting aside or disregarding such contracts are too familiar to need recital here.

In the present case the receipt is dated October 1, 1894, and as it is proof of a settlement at that date between these parties, it necessarily includes all claims held by the decedent at that time against the appellant. If it does not mean that it is a useless instrument, and the giving of receipts in full in final settlements between parties, might as well be abandoned. The learned judge of the court below we think was in error when he held that the burden rested upon the appellant to show either that he had paid the $1,000 note in question, or that his father released him from its payment, notwithstanding that he held the receipt in full of all claims. As it seems to us, the burden of proof was shifted after the production of the receipt in full, and it rested then upon the representative of the decedent to furnish proof showing that the receipt did not apply to a claim held by the decedent against his son, the appellant, at the time the receipt was given. The testimony discloses that there was a note for $1,000 given by the appellant to his father on September 8, 1894, and that this note was found among the decedent's papers and was included in the inventory of his estate. It seems that when the first account of the executors was filed a credit was taken for this note as uncollected. When the audit took place it appears that this note was charged on the debit side as an asset of the estate. Thereupon the appellant presented a petition to the court below, in which he set forth that the executors were not present at the second audit, and did not know that the note had been charged against them, that the note had been paid and extinguished during the life of the decedent, and asking that the audit should be opened, and that the item of $1,000 for this note should be stricken out of the debit side of the account. The court granted the rule and heard testimony on the subject. The petition was dismissed by the court below and the item remained as a debit item in the account, and was embraced in the distribution. We have carefully read and considered the verbal testimony taken on the hearing, and we are of opinion that it does not suffice to explain away, or in any manner to defeat the legal operation of the re-

ceipt in full given by the decedent to the appellant. The testimony showed that there was a transaction some years before in which the father and son being tenants in common of a piece of real estate, the son conveyed his half to his father in consideration of the father loaning him some money. That afterwards the father sold the land for a very large increase over the price at which the son conveyed his half to his father, the amount being $27,000. That afterwards the father declared repeatedly that he would make it right with his son about his share of the selling price of the land, and that he did give his son notes and cash to the amount of $3,000 or $4,000. There was further testimony that the father declared that his son had got into financial trouble by going bail for his brother, and that he had loaned his son money to pay that bail money, that he had to take the property from Oliver to help him out, and that he had left the matter open for Oliver to redeem at any time. It was also testified by McClees, one of the executors, that the old man had told him that he had made Oliver a present of $1,000 and he intended to give him another $1,000, as he thought he ought to have more than the rest. McQuaide, the other executor, testified that the old man told him that " he intended to make the matter right with Oliver; that Oliver owed him some and that he was going to make that matter right with him on account of this indebtedness. . . . He was speaking of this property down at what he calls Glassport now." There was more testimony of a similar character which it is not necessary to repeat. It was contended, upon this testimony, that the giving of the receipt in full was in the line of this declaration of intention on the part of the decedent, and that when he gave the receipt in full he intended to release all claims he had against his son on account of this indebtedness. On the other hand, the widow testified that the appellant had admitted to her that he still owed the note in question to the estate, but the appellant testified he had never told her so. All of this verbal testimony is very well in its way, but it proves but little as against the legal efficacy of the receipt, and much of it confirms the theory of the appellant. But it is manifest there is no sufficient testimony to overthrow the receipt, and hence its proper legal efficacy must prevail. We are therefore of opinion that the receipt was valid legal proof of an actual settlement of all

matters between the deceased and his son, and operated to discharge the latter from any claim on this note for $1,000.   The assignment of error is sustained.

The decree of the court below is reversed at the cost of the appellees and the record is remitted with instructions to restate the account in accordance with this opinion.