Charles T. Benseman, administrator c. t. a. of the Estate of Mary Smith, deceased, now to the use of Arthur L. Shay, administrator d. b. n. c. t. a. of said Estate, *v.* The Prudential Insurance Company of America, Appellant.

*Life insurance—Policy—Adjustment—Evidence—Receipts—Parol variation of written instrument.*

A receipt in full for all claims under a policy of life insurance, though not conclusive, is always prima facie evidence of settlement, and should not be varied or set aside but for weighty reasons, especially after a lapse of time.

Where a policy of life insurance provided that in case the age of the insured shall have been understated by mistake, the sum insured will be reduced to the amount the premium would pay for at the true age, and it appears prima facie from the proofs of death that the age of the insured was understated in the policy, and there is no evidence to the contrary, a receipt acknowledging payment of the sum that the premiums would have paid for if the age of the insured was as set forth in the proofs, "which payment is in full for all claims against said company under" the policy will bar recovery for the difference between the amount paid and the face of the policy unless the plaintiff shows by clearly preponderating testimony that the payment was merely an account, and that

the receipt was not what it purported to be, a settlement in full of all claims under the policy.

Argued Dec. 4, 1899.   Appeal, No. 185, Oct. T., 1898, by defendant, from judgment of C. P. Schuylkill Co., Sept. T., 1896, No. 149, on verdict for plaintiff.   Before RICE, P. J., ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed. Opinion by RICE, P. J.

Assumpsit on policy of life insurance.   Before KOCH, J.

The facts appear in the opinion of the court.

The court charged in part as follows:

Whatever dispute there was between the parties had reference to the age of Mrs. Smith at the time she was insured.

The first question that arises for your determination is whether, when the $856.63 was paid over to Charles Benseman, the administrator of Mrs. Smith's estate, it was paid in settlement of the claim of that estate on these two policies against the company, for, if the matter was settled upon the adjustment of the company at that time, that would end the case; if it was settled then, that was the end of it, and it should receive or have no new beginning here. There is some controversy on that. The plaintiff claims that when this money was received it was received not in full settlement, as the check itself in language purports the settlement to have been, but that it was only a partial payment received by the claimant on account of the urgency of certain creditors of the estate for money, or certain claims against the estate for payment. The defendant asserts, alleges and insists that the true settlement is set out in the correspondence, and that from the terms of the correspondence itself there was no variance made at the time that the check was turned over, which was on November 8, 1895, as nearly as the evidence fixes it.

If Mr. Roth's testimony is true in point of fact, if his side of this controversy is established, to wit: that the correspondence itself sets forth the true state of facts, and that a settlement was made, for the word "settlement" is used in the correspondence, upon the basis stated in the letters, then the plaintiff here would be held to the conditions of that arrangement, which the correspondence states are that this case shall be reopened

upon production of the family records, or other satisfactory proofs of a mistake on the part of the company in stating the ages at forty-nine and fifty; in other words, the company agreed, if the correspondence be the only settlement that was made, that if it should be proven to their satisfaction that there was a mistake made, they would be willing to correct the error, and, if there was a difference coming over to the estate of Mrs. Smith, to pay it.

But the plaintiff claims that the settlement was not made as stated in that correspondence; that at the time they came together finally and received the check and handed over the receipt, that then the money was only received and the receipt given upon the distinct understanding that they would sue for the balance. Mr. Wadlinger swears that at the time he stated that as to the balance, it would have to be left for future settlement, and that he saw no other way than to bring a suit for it.

[Now, you have both sides of the controversy, the one contending that there was an absolute and unqualified agreement of settlement as set down in the letters, the other side asserting that it was no final settlement at all, that the money received was a partial payment. If it was received as a partial payment, then the claimant had no other way, if this company would not pay the difference than to bring the case where it now is, let a jury determine the fact.] [9]

Defendant's points and the answers thereto among others were as follows:

[10. The evidence in the cause thus showing that the age of Mary Smith was thus understated at the time of the issuing of both of the policies in suit, anywhere from two years to nine years, the sum insured will, under the fifth condition embodied in both of said policies, " be reduced to the amount the premium would pay for at the true age." Or under the act of June 23, 1885, " to such sum as the premium paid would have purchased at the applicant's real age at the time of effecting the insurance." *Answer:* Refused without reading.] [1]

[12. The company defendant having offered to the administrator to pay him the said sum of $856.63, thus adjusted and ascertained, in compromise settlement and payment in full of his claims against the company, the said administrator did accept the amount so offered, and did, on November 8, 1895, sign and

execute and deliver unto said company his receipt of that date for said amount, " in full for all claims against said company, under policies No. 3,136,167–3,688,427, issued upon the life of Mary Smith, adjusted at ages 49 and 50 years respectively." *Answer :* Refused without reading.] [2]

[14. The said plaintiff having thus accepted and collected the company's check for the amount named, and having executed and delivered his receipt unto the company therefor, as aforesaid, is now estopped from recovering any further sum or sums of money from said company defendant, under said policies of insurance, or either of them. *Answer :* Refused without reading.] [4]

[18. Under all the evidence in the case the plaintiff cannot recover, and the verdict of the jury must be for the defendant. *Answer :* Refused without reading.] [8]

Verdict and judgment for plaintiff for $185.45. Defendant appealed.

*Errors assigned* among others were (1, 2, 4, 8, 9) above instructions, quoting them.

*A. W. Schalck*, for appellant.—Proofs of death have been held admissible in favor of the company against the plaintiffs : 4 Joyce on Insurance, sec. 3772, p. 3598.

The preliminary proofs are admissible as prima facie evidence of the facts stated therein against the insured, and on behalf of the company: Campbell v. Ins. Co., 92 Mass. 213 ; Irving v. Ins. Co., 1 Bosworth, 507.

The decision of the court below was correct. If the plaintiff desired to overcome the prima facie case made by the proofs of death furnished, as already suggested, it was their duty to undertake to do so if they could accomplish it, and therefore the objections against the admissibility of such proofs were properly overruled : Helwig v. Ins. Co., 132 N. Y. 331.

In the case at bar there is no allegation of either fraud, mistake or ignorance of the legal rights of the claimant, so Hamsher v. Kline, 57 Pa. 397 is not authority.

The latest reported case in Pennsylvania involving the conclusive effect of a receipt in full however, so completely covers

and sustains our contention in the case at bar, that we need not look for further authorities: Crawford v. Oil Co., 189 Pa. 415.

This is based on the familiar rule in equity, that a chancellor will not reform a written instrument, unless fraud, accident or mistake be proved, and even then only when the evidence of the plaintiff, or of the plaintiff's witness (if contradicted by the defendant, or by the defendant's witness) is corroborated by at least one witness, or by other corroborative evidence equivalent thereto.

Where it is oath against oath the paper stands: Brawdy v. Brawdy, 7 Pa. 157; Phillips v. Meily, 106 Pa. 536; Cloud v. Markle, 186 Pa. 614; Strickland v. Isett & Wray, 186 Pa. 280; Heilner v. Coal Co., 9 Pa. Superior Ct. 78; Steel Iron Co. v. Jacobs, 9 Pa. Superior Ct. 122.

In order to render admissible parol evidence to vary the terms of a written agreement on the ground of fraud in its procurement, there must be evidence of fraud other than that which may be derived from the mere difference in the parol and written terms: Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519.

Where attempt is made to set aside or reform a written contract on the ground of fraud, accident or mistake, the parol evidence must not only be of what occurred at the execution of the document, but it must be clear, precise and indubitable in order to carry the case to the jury: Keller v. Railroad Co., 10 Pa. Superior Ct. 240.

*George J. Wadlinger*, for appellee.—In an action upon a policy of life insurance the plaintiff is not bound by admissions contained in the proofs of death, and may offer evidence to contradict or vary them: Fisher v. Ins. Co., 188 Pa. 1.

A receipt is never an estoppel unless the party can show injury in consequence of their reliance on such receipt: Atkins v. Payne, 190 Pa. 5.

The rule that all receipts may be explained by parol is applicable to a life insurance policy which contains a receipt for premiums: Sargeant v. Ins. Co., 189 Pa. 341; Hamsher v. Kline, 57 Pa. 397; Horton's Appeal, 38 Pa. 294; Russell v. Church, 65 Pa. 9; Batdorf v. Albert, 59 Pa. 59.

A plaintiff may contradict his own receipt by parol evidence:

Bell v. Bell, 12 Pa. 235; Gue v. Kline, 13 Pa. 60; Grove v. Donaldson, 15 Pa. 128.

OPINION BY RICE, P. J., March 21, 1900:

This was an action of assumpsit upon two policies of insurance issued upon the life of Mary Smith who died on September 19, 1895. In the first policy, dated November 4, 1889, her age was stated as being forty-five years; in the second, dated June 16, 1890, it was stated as being forty-six years.

One of the agreements indorsed on the policies and made part of the same reads: " In case the age of the insured shall have been understated by mistake, the sum insured will be reduced to the amount the premium would pay for at the true age."

It was stated in one of the certificates of identity that "she appeared to be fifty-three years of age," in another fifty-five years, in the undertaker's certificate that her "apparent age" was sixty years, and in the attending physician's certificate it was stated that her " correct age at death " was fifty-six years. This last certificate was witnessed by a son of the deceased, and had this instruction plainly printed on it: " Be careful to give correct age at death." All these certificates were submitted to the company by the administrator as parts of the proofs of death.

On October 15, 1895, the superintendent of the company wrote to the administrator as follows: " I beg to inform you that check drawn to your order in settlement of the claim under policies No. 3,136,167, etc., on the life of Mary Smith, deceased, is at this office awaiting your calling for the same, and I will thank you to arrange and call for the same. The company has adjusted the claim at ages forty-nine and fifty, but will be willing to reopen the case at any time upon receipt of the family record or other satisfactory proof that their adjustment is incorrect. Awaiting your calling," etc. On November 2 the attorney of the administrator wrote to the superintendent, and after referring to the above letter said: " Under this adjustment I understand $856.63 will be paid. I have concluded to advise my client to accept this offer, and will settle the claim for the present on that basis, if your company is still willing to carry out their proposition. I would suggest, however, that

inasmuch as you requested us to surrender the original policies or certificates, that you furnish us with copies thereof for any future use for which they may be required." On November 8 the superintendent wrote in reply to this letter as follows : " Replying to your favor of the 2d inst. I would inform you that check in the amount of $856.63, drawn in favor of the administrator of the Mary Smith estate, C. Benseman, administrator, is at this office awaiting his demand for the same upon giving the usual receipt therefor and surrendering of the policies and premium receipt books. As to furnishing of copies of the policies, would say that we deem the length of time in which these policies have been in your hands to be sufficient to fully acquaint yourself with the contents thereof, and do not consider copies necessary. Furthermore, the administrator holds our letter in which we 'will be willing to reopen the case at any time upon receipt of family records or other satisfactory records that the adjustment is incorrect.'" On the same day the parties met, and after some parleying the company's check for $856.63, " in full for all claims under " the policies was given the administrator, and he gave the following receipt: "Received of the Prudential Insurance Company of America eight hundred fifty-six and sixty-three one hundredth dollars, which payment is in full for all claims against said company, under policy No. 3,136,167—3,688,427, issued upon the life of Mary Smith, adjusted at ages forty-nine and fifty years respectively." The check was duly paid, and was for the amount of insurance the premiums would pay for if the correct age of the insured was as stated in the proofs of death. This action was brought to recover the difference between that amount and the amount expressed on the face of the policies.

There was an unfortunate conflict of testimony as to what was said when this check and receipt were exchanged. The plaintiff's attorney testified : " I said to Mr. Roth that Mr. Benseman would only accept a partial payment because of the pressing claims against the estate ; Mr. Roth replied to that, ' You can't have this money unless I get a receipt,' and I, about as short and snappy as him, said that ' whenever you produce your receipt I will determine whether Mr. Benseman will sign it or not ; ' Mr. Roth went into an adjoining room and in a few minutes came back with the receipt which appears here and now

bears the signature of Benseman, excepting that the receipt ended at the word Mary Smith; he handed the receipt to Benseman and Benseman turned it over to me, and I said, 'Mr. Benseman, I instruct you not to execute that receipt,' and Mr. Roth said, 'Well, then you can't have this check.' We had some further parley about the matter and I said, 'There is only one way this can be settled, Mr. Roth, and that is to accept this money as a partial payment and leave the balance of this claim open for future adjustment, but in my opinion the only way it can ever be adjusted is by a law suit;' I said, 'If you will put after the name Mary Smith something to show that this has been adjusted at your claim at the ages of forty-nine and fifty, we will take this partial payment;' Mr. Roth went in the other room and came back with the receipt containing these words, meaning the words, 'adjusted at ages forty-nine and fifty years respectively.'" On the other hand, the defendant's representative, whilst admitting that these words were added at the plaintiff's request, denied that anything was said about bringing suit for the balance, and asserted, that, when the plaintiff's attorney spoke about settling the matter on account, "I told him emphatically that it would not be settled in any other way excepting in accordance with my letter."

A receipt in full is not conclusive, but is open to explanation (Sargeant v. Ins. Co., 189 Pa. 341, and cases cited); yet if there be no explanatory evidence it has a defined legal meaning. "While a receipt of this kind is not conclusive, yet it is always prima facie evidence of a settlement, and should only be set aside for weighty reasons, especially after a lapse of years, and the reasons should be fully and clearly stated. Fraud, accident or mistake would be sufficient to avoid such an instrument, but in such case the cause of avoidance should clearly appear:" Harris v. Hays, 111 Pa. 562; Hamsher v. Kline, 57 Pa. 397. Speaking of the case of Harris v. Hays, Mr. Justice GREEN said: "We thus have a clear and well defined expression as to the legal effect of such an instrument, and it is authoritatively ruled that it cannot be set aside except for weighty reasons, such as fraud, accident or mistake, and such causes for disregarding them must be made to appear distinctly. Such receipts then are placed in the same category as other written instruments which are made the depositories of the solemn

agreements of contracting parties. The rules as to setting aside or disregarding such contracts are too familiar to need recital here: " Rhoads's Estate, 189 Pa. 460. Where a receipt in full was set up as a defense in an action for professional services, and the plaintiff's testimony that when the receipt was given it was agreed that it should not have the effect of a receipt in full, but that he should receive additional compensation, was directly contradicted by the defendant's agent, it was held, that, as the evidence was evenly balanced, the receipt was conclusive against the plaintiff's right to recover: Crawford v. Forest Oil Co., 189 Pa. 415. In the recent case of MacDonald v. Piper, 193 Pa. 312, the trial judge instructed the jury to the same effect, and this was held not to be error.

We are of opinion that these principles of the law of evidence are applicable in the present case. There was no relation of trust or confidence between the parties. There was a controversy between them. They were dealing at arm's length. There was no concealment of facts, no fraud and no mistake either of fact or of law. At least, none was proved. On the contrary, the claim was adjusted on as favorable a basis as the plaintiff had a right to insist on if, as stated in the sworn certificate of the attending physician, the "correct age at death" of the insured was fifty-six years. Was there not a prima facie presumption that the adjustment was correct? It is urged that in an action on a life insurance policy the plaintiff is not bound by admissions contained in the proofs of death, and may offer evidence to contradict or vary them: Fisher v. Life Association, 188 Pa. 1. Let this be granted, yet this positive affidavit having been furnished by the plaintiff to the defendant as part of the death proofs it was, to say the least of it, some evidence of the age of the insured: Conn. Mut. Life Ins. Co. v. Schwenk, 94 U. S. 593; 24 L. ed. 294. In the absence of any evidence whatsoever to explain it or to show that it was not strictly true, it may well be questioned whether a jury ought to have been permitted to guess that it was not true, even if there had been no settlement. In other words, was not the burden of proof shifted? We think it was. At all events it is clear that there was not sufficient evidence to warrant them in finding, not only that it was not true, but also that the receipt was not what it purported to be, a settlement in full of all claims under these policies. It fol-

lows that the defendant's eighteenth point, (eighth assignment) should have been affirmed.

The eighth assignment of error is sustained, the judgment is reversed, and judgment is now entered for the defendant.