# Guhl v. Frank, Appellant.

*Evidence—Receipt—Payment—Mutual accounts.*

A receipt for money is prima facie evidence of payment, but is not conclusive and is subject to explanation. When a receipt in full represents the balance found to be due upon an account stated between the parties involving mutual dealings covering a long period of time, it should only be set aside for weighty reasons. Fraud, accident or mistake would be sufficient to avoid such an instrument, but in such a case the cause of avoidance should clearly appear.

Where two parties having mutual dealings and accounts covering a long period meet, and after going over the accounts, and making mutual concessions, one of the parties gives to the other a receipt in full, and there is no evidence that anything was omitted from, or included in, the receipt through a mistake, or that there had been any error in the calculation, or that any fraud had been committed, the receipt must prevail.

*Husband and wife—Execution—Husband's death—Trusts and trustees.*

A trustee who nominally holds property for the use of a wife cannot be held responsible for the loss of it when it is taken in execution for a debt of her husband for which it is legally liable.

Argued Nov. 13, 1902.   Appeal, No. 189, Oct. T., 1902, by defendant, from judgment of C. P. Lancaster Co., June T., 1900, No. 29, on verdict for plaintiff in case of Albert Guhl to use of Henry Carpenter v. Philip Frank.   Before Beaver, Orlady, W. W. Porter and W. D. Porter, JJ.   Reversed.

Assumpsit for money had and received.   Before Landis, J.

On the rule for a new trial Landis, J., filed an opinion in which he stated the facts and issues as follows :

On or about April 1, 1894, Frank leased to Guhl a farm of 200 acres, located in Conoy township, this county, and, by leases from year to year, the tenancy was continued until April 1, 1900.   Guhl was the owner of certain personal property, included in which was a portable steam engine and thresher, which he brought when he came to the leased premises.   About June, 1894, Sellers & Sweigart issued executions against Guhl on two judgments, for $522 and $496 respectively, and, under these writs, the sheriff levied upon the personal property above referred to.   Frank then volunteered to pay off the executions, and, having paid the holders of the judgments, he had them transferred to himself, and the sale was then, in a friendly way, proceeded with, and the property was bought in by Frank. The amount thus paid out by Frank was $1,071.57.   The property remained on the premises with Guhl, and an arrangement was made whereby it, or so much as was left, was to belong to Guhl, after Frank had been paid his full money.   In the spring of 1900, there was a public sale of what remained, which was held in Frank's name.   The engine and thresher was put up at this sale and was bought in by Gabriel Moyer for Frank for $1,200.

After the sheriff's sale, John L. Breneman, the son-in-law of Frank, procured and gave a book to Guhl, in which, to the time of his death, he kept all the items of debit and credit between Guhl and Frank.   After that time, the account was kept by Harry C. Schock, another son-in-law of Frank.   There was

another book kept for Frank, and in this latter one were contained a number of items, without date, aggregating $674.80, which did not appear in Guhl's book. Guhl could not read or write, and depended entirely upon what was told and read to him. Some time after April 1, 1900, at the request of Schock, Guhl went to Mount Joy to meet him and settle the unadjusted accounts. While there, he signed a receipt in favor of Frank for $100 " in full payment of all claims to date, including my interest in the wheat now in the ground on his farm in Conoy Township, Lancaster Co., Pa." He also received a check for $100, and, at the bottom of this check, was marked: " This check is in full for all claims of whatever nature to date." Upon the trial, Guhl denied that either the accounts, the receipt or the check were ever read to him, and that what he signed was a receipt for $100 for his share of the wheat in the ground, to which he was entitled under the terms of the lease. The jury rendered a verdict in favor of the plaintiff for $1,031.32.

The two points raised by the defendant in the reasons assigned are : First, that the receipt and check having been signed by Guhl, and showing a settlement in full, these writings cannot be set aside upon the testimony of Guhl, without corroborating evidence, which counsel for the defendant urged is absent ; and secondly, that, as, under the settlement, the engine and thresher was to become the property of Guhl's wife, being retained by Frank and kept by him until the succeeding fall, and the failure of Guhl or his wife to get the thresher being brought about by no act of Frank, but by reason of the sheriff having levied upon and sold it under an execution against Guhl, Frank could not be charged in the account with anything on account of this engine and thresher.

Verdict and judgment for plaintiff for $1,031.32 upon which judgment was entered for $440.55, all above that amount having been remitted.

*Error assigned* among others was in submitting the case to the jury.

*John A. Coyle*, of *Coyle & Keller*, for appellant.—Where upon the settlement of a disputed mutual account, one of the

534 GUHL *v.* FRANK, Appellant.

parties executes and the other accepts a receipt in full, and the consideration actually passes, " it is final and conclusive, unless impeached by fraud, accident or mistake, according to the chancery rule : " Flynn v. Hurlock, 194 Pa. 462 ; McDonald v. Piper, 193 Pa. 312; Crawford v. Forest Oil Co., 189 Pa. 415 ; Rhoads's Est., 189 Pa. 460 ; Huckestein v. Nunnery Hill Incline Plane Co., 173 Pa. 169 ; Rockey's Est., 155 Pa. 453; Ogden v. Phila., etc., Traction Co., 202 Pa. 480; Daly v. Dallmeyer, 20 Pa. Superior Ct. 366 ; Breidegam v. Enterprise Savings Assn., 141 Pa. 112 ; McGrann v. Pittsburg, etc., R. R. Co., 111 Pa. 171 ; Chapman v. R. R. Co., 7 Phila. 204.

The uncorroborated testimony of one witness is insufficient to vary or contradict the terms of a written instrument: Dickson v. Hartman Mfg. Co., 179 Pa. 343 ; American Brewing Co. v. Reinsburrow, 197 Pa. 67.

The plaintiff admitted that if his wife had gotten the engine and thresher, the settlement would have been effectual and he would have had no claim against the defendant.

*W. U. Hensel,* with him *H. Carpenter,* for appellee.—A receipt in full is prima facie, but not conclusive, evidence of a settlement. It may be attacked on the ground of fraud, mistake or ignorance of his legal rights by the party who gave it. So, if the relation between the parties was one of trust or confidence, such as guardian and ward, or attorney at law and client, it may be insufficient of itself : Hamsher v. Kline, 57 Pa. 397 ; Sargeant v. National Life Ins. Co., 189 Pa. 341.

Opinion by W. D. Porter, J., April 20, 1903 :

On or about April 1, 1894, the defendant leased to Guhl, the legal plaintiff, a farm situated in Lancaster county, and the tenancy was continued by leases from year to year until it terminated on April 1, 1900. Sometime in the month of June, 1894, Sellers & Sweighart obtained judgments and issued executions against Guhl and levied upon his personal property then upon the farm. Frank paid and took assignments of the judgments and the property was then sold under the executions and bought in by Frank. The property remained upon the premises and was used by Guhl in his farming operations, and the parties entered into an arrangement under which the property

was to become that of Guhl after Frank had been paid the full amount of his expenditures. The personal property continued in this condition, various articles being sold from time to time, until the spring of 1900, when by mutual arrangement all that remained was sold at public sale in the name of Frank. Included in the property was an engine and threshing machine which was put up at this sale, but was bought in by Gabriel Moyer for Frank at the price of $1,250, and by arrangement between the parties the sale thereof was treated as a nullity. The parties had had mutual dealings which involved considerable amounts, and on April 14, 1900, after Guhl had removed from the farm, Guhl went to Mt. Joy and there met Schock, the agent of the defendant, and they went over the accounts together, and after doing so Guhl accepted Frank's check for $100, which he subsequently cashed, and signed a receipt in the following form:

"April 14, 1900.

"Received of Philip Frank one hundred dollars ($100) in full payment of all claims to date, including my interest in the wheat now in the ground, on his farm in Conoy township, Lancaster county, Pa.

"ALBERT GUHL."

Guhl admitted, upon cross-examination, that he heard Schock dictate this receipt to Miss Boyce, and that he heard it read. He subsequently brought this action alleging that there was a balance of $2,122.22 due him upon their mutual dealings.

A receipt for money is prima facie evidence of payment, but it is not conclusive and is subject to explanation. When a receipt in full represents the balance found to be due upon an account stated between the parties involving mutual dealings covering a long period of time, it should only be set aside for weighty reasons. Fraud, accident or mistake would be sufficient to avoid such an instrument, but in such a case the cause of avoidance should clearly appear. "Such receipts then are placed in the same category as other written instruments which are made the depositories of the solemn agreements of contracting parties. The rules as to setting aside or disregarding such contracts are too familiar to need recital here:" Rhoads's Estate, 189 Pa. 460. When parol testimony tending to im-

peach such a receipt is evenly balanced by contradictory evidence of like character, the receipt must control and cannot be set aside : McDonald v. Piper, 193 Pa. 312; Flynn v. Hurlock, 194 Pa. 462; Ogden v. Phila., etc., Traction Co., 202 Pa. 480. The receipt which Guhl signed appeared upon its face to be the final end of all dealings between the parties up to that time; there was no ambiguity in its terms.   There was no evidence which would have justified a finding that anything was omitted from or included in the receipt through a mistake, nor that there had been any error in the calculation by which the balance was ascertained.   There was no evidence that any fraud had been perpetrated.   Guhl testified that his understanding was that the receipt only referred to the settlement for the wheat then growing in the land; this was the only evidence tending to invalidate the paper.   Guhl was flatly contradicted by Schock and Miss Boyce, the latter an apparently absolutely disinterested witness.   Both of these witnesses testified that the accounts were fully gone over and that the balance arrived at involved concessions; that the balance having been agreed upon the receipt was the ultimate conclusion of the whole matter, and the money was then paid in accordance with its terms. With the evidence standing thus we are constrained to hold that the receipt must prevail.   The request of the defendant for a binding instruction ought to have been affirmed, and the first specification of error is sustained.

Even if a receipt of this character is to be impeached by the testimony of one witness, although the latter is overwhelmingly contradicted, the plaintiff upon his own showing was not entitled to recover.   His testimony does not indicate that upon the principal point in controversy he was sure of his ground. He did, however, finally admit upon cross-examination that an agreement touching all the matters in controversy had been arrived at; his answer to one question revealed his whole position.   " Q. Was that the agreement at the time ?   A. What is that?   Q. That you were to take the engine and the threshing machine in your wife's name, and that that, with the $100 in cash and the hay and your wife's bill and your son's bill, was to close up everything between you, provided Mr. Frank would keep the engine and threshing machine for your wife.   A. Yes, if he kept it; if they would have kept it; but he didn't

do it and he said if he wouldn't hold it, it was no settlement." The engine and threshing machine had prior to this time been held by Frank, under the arrangement that it should become the property of Guhl as soon as Frank had been reimbursed. This settlement determined that Frank had been repaid, and the engine and threshing machine had become the property of Guhl; Frank was holding them for Guhl. The testimony of the plaintiff amounted to nothing more than an assertion that Frank was to hold these articles as trustee for Guhl's wife. The testimony quoted is a clear admission that if Guhl's wife had received the engine and threshing machine, all the terms of the final settlement would have been complied with, and the receipt would have been exactly what it purported to be. The real complaint of the plaintiff, therefore, was that Frank had failed to hold the engine and thresher for Guhl's wife. There was no evidence that Frank had been guilty of any breach of duty with regard to the engine and thresher, even if he had consented to hold it as trustee for the wife instead of for Guhl himself. The testimony of Guhl upon that point was that when he, Guhl, was preparing to remove this machinery, it was levied upon by a creditor of Guhl for his debt and subsequently sold by the sheriff upon that execution. There was no suggestion that Frank was guilty of any collusion in the matter or that he had anything to do with the seizure of the property by the sheriff. The transaction involved a voluntary transfer of property by a husband to his wife and it was not within the power of the husband to defeat his creditors in this manner. The evidence established that Frank had held the property as he had agreed to do, until it was taken from him by legal process for the purpose of satisfying the debt of the real owner. The testimony of Guhl established beyond all question that this property was legally liable to be taken under the execution upon which it was sold. A trustee who nominally holds property for the use of a wife cannot be held responsible for the loss of it when it is taken in execution for a debt of her husband for which it is legally liable.

The judgment is reversed.