## NEW YORK LIFE INS. CO. v. SEIFRIS.
### No. 4407.

Circuit Court of Appeals, Third Circuit.
Jan. 20, 1931.

Wm. H. Eckert, of Pittsburgh, Pa., Louis H. Cooke, of New York City, and Allen T. C. Gordon, and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for appellant.

Zeno F. Henninger, of Butler, Pa., and Paul A. Stuart, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

In this suit on a policy of life insurance the plaintiff had a verdict and judgment. The defendant appealed.

Alois F. Seifris, a practicing physician and local medical examiner of the New York Life Insurance Company, applied to that company for a policy of insurance. The application was dated June 13, 1928, and a policy on Seifris' life, with his wife (the plaintiff) as beneficiary, was issued by the insurance company on June 27, and was handed Seifris by McCall, the company's local agent, about the first of July, following. Seifris

met with an accident and died on August 4. On proof of death, the insurance company denied liability under the policy by reason of a provision of the application (made a part of the policy) which reads:

"That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon is paid in full during his lifetime."

Suit followed. At the trial, two related issues of fact and one question of law arose under this provision; one issue of fact being whether the policy had been formally and finally delivered to Seifris or had been left with him merely for inspection; the other, whether Seifris had in his lifetime paid the first premium. The question of law concerned the character or measure of evidence required of the insurance company to contradict its receipt for the premium.

While both issues of fact were contested at the trial, the main controversy revolved around the issue whether Seifris had paid the first premium, for if he had not, that under the terms of the policy was the end of the matter.

The plaintiff made a prima facie case by proving the death of the insured, and by proving the policy of insurance which contained a receipt for the first premium in these words:

"This contract is made in consideration of the payment in advance of the sum of $708.10, the receipt of which is hereby acknowledged, constituting the first premium. * * * *"

There she rested. The defendant company then assumed the burden of contradicting its own receipt and otherwise proving nonpayment of the first premium. Gibson v. Life Insurance Co., 181 Mo. App. 302, 168 S. W. 818. The learned trial judge in his charge instructed the jury on the defendant's burden of contradicting its receipt in terms which the defendant thinks bore too heavily upon it, and which therefore it assigns as error. The instruction was in these words:

"The burden, as I have said to you, under the facts of this case, due to the acknowledgment of the policy itself, rests with the insurance company to satisfy you by proof that is clear and convincing that the premium was not paid."

The defendant maintains that the quality or measure of evidence which the law requires to contradict its receipt is nothing more than that of preponderance. We cannot agree with this proposition. The preponderance rule applies where one contradicts someone else. Something more is required when a party takes the stand to contradict what he has previously, and deliberately, said under his own hand or, as here, under its own seal. A receipt is a written acknowledgment of payment and therefore evidence of payment. Moreover, it is evidence of a high order because it is the creditor's admission against interest that the debtor has paid his debt. A receipt is, of course, subject to explanation, correction and, indeed, to contradiction, Gregory v. Huslander, 227 Pa. 607, 76 A. 422, especially where, as in this case, an insurance company in New York issues a printed policy intended to be delivered in Pennsylvania under circumstances indicating the improbability of payment of premium before delivery, although the policy speaks to the contrary. Against the legal force of a receipt thus made before payment, insurance companies can and usually do protect themselves by promulgating and enforcing a rule which provides that delivery of a policy before actual payment of the premium shall be for inspection only and shall be made upon a formal receipt or acknowledgment to that effect signed by the proposed insured, and that a policy so delivered shall remain outstanding on the receipt for not more than ten days. The defendant insurance company had such a rule, but in this case its agent delivered the policy to the insured without obtaining his receipt or acknowledgment that it was delivered merely for inspection. Thus its receipt for the premium was left outstanding and, except for McCall's testimony, was not affected or limited by any qualified delivery of the policy. This prompted the court to charge that in view of the delivery of the policy and accompanying receipt without this formal qualification or limitation there rested on the company the burden of satisfying the jury "by proof that is clear and convincing that" (contrary to the receipt) the premium was not paid."

The character of proof required of this company to contradict its own receipt must, we hold on ample authority, be more than preponderance. Though open to explanation and contradiction, courts have said that receipts should not "be set aside except for weighty reasons and by proof clear and satisfactory," Flaccus v. Wood, 260 Pa. 161, 103 A. 549, 550; the "causes for disregarding" a receipt, such as fraud, accident or mistake, "must be made to appear distinctly," Rhoads' Estate, 189 Pa. 460, 42 A. 116, 117;

to do away with the force of a receipt, "the testimony should be convincing," Vigus v. O'Bannon, 118 Ill. 334, 8 N. E. 778, 779, Winchester v. Grosvenor, 44 Ill. 425; it "must be sufficient to produce strong and clear conviction," Gibbons v. Potter, 30 N. J. Eq. 204. We find no error in the court's instruction as to the kind of testimony which, in view of the facts, the defendant was required to produce to contradict its own receipt.

■ The defendant, by its main assignments, charges error to the court in refusing to direct a verdict in its favor and in denying its motion for a new trial. Passing by the latter assignment as raising a matter not reviewable on appeal, Henderson v. Moore, 5 Cranch, 11, 3 L. Ed. 22; Pittsburgh, C. & St. L. Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; Ayers v. Watson, 137 U. S. 584, 11 S. Ct. 201, 34 L. Ed. 803, we come to the question whether there was enough evidence on the issues of delivering the policy and paying the first premium to submit to the jury and to sustain a verdict for the plaintiff. On the issue of delivery, McCall, the defendant's local agent, testified that he delivered the policy to Seifris solely for his inspection and consideration. He further testified that Seifris did not know whether he would accept the policy as written, but wished him to get from the company a better policy with a lower premium. He also introduced in evidence two letters written by Seifris to the company and one to the company by himself. The latter is self-serving and has no probative value. Seifris' letters may be read in two ways. When read one way, they are valid evidence of non-acceptance, and therefore of non-delivery of the policy and non-payment of the premium. When read the other way, they are consistent with final delivery and acceptance of the policy and payment of the premium, yet indicating a subsequent effort by Seifris to obtain a better policy with lower rates. Against this evidence for the defendant stands the admitted failure of McCall, its agent, to obtain from Seifris a signed receipt, on the company's regular form, that the policy was left with him only for inspection, as required in such a case by the rules or practice of the insurance company, his principal, and the company's failure to recall the policy within ten days or any other time before the insured's death. The plaintiff, wife of the insured, testified that she was in the room—a combined living room and dining room—when McCall brought the policy; that she heard McCall

tell her husband that "he had brought him a very good policy, and proceeded to explain it to him, and my husband called to me and asked me if I thought he should take the policy, and I answered him by saying that I thought the family needed protection. He turned to Mr. McCall and he said, 'All right, Mr. McCall, I will take the policy.' Mr. McCall said, 'That's fine, Doctor, * * * Your policy goes into effect today.'" Doubtless the jurors thought that sounded like the truth. In any event, it was evidence of an unconditional delivery of the policy and also of payment of the first premium because of the accompanying receipt. Though in sharp conflict with the defendant's evidence of delivery only for inspection and of non-payment of the premium, it was proper to submit to the jury, and had they believed it, as evidently they did, it was enough to sustain their verdict on this issue.

■ Coming to the issue of payment of the first premium, McCall and Seifris after this conversation went to Seifris' office. What happened there only these two men knew. McCall said Seifris did not pay him the premium then or later. Seifris, being dead, could say nothing. In further proof of the improbability of payment of the premium, the defendant proved that Seifris did not draw a check for the amount and that his bank balance, then and later, was so small that no check for that amount could be drawn against it and be honored. To controvert the inference of this evidence, the plaintiff testified that her husband had the habit (which doubtless the jury recognized as not unusual with unbusinesslike country practitioners) of keeping large sums of money about the house and in his pockets; that sometimes he would say to her " 'Come on, let us count this money,' and he would have on his person as much as $500"; and that she would remonstrate with him for this practice. This evidence taken in connection with the defendant's delivery of the policy without demanding or receiving the insured's written acknowledgment that it was delivered only for inspection and without the policy being recalled, and particularly in connection with the defendant's receipt of payment of the first premium contained in the policy so delivered, was, we think, enough to justify the submission and later to sustain the jury's finding of payment implicit in their verdict.

■ After submitting the above two issues of fact, the plaintiff asked the court to charge a specific point on the one issue of payment to the effect that payment to McCall, the lo-

cal agent, was payment to the company. The court affirmed the point and in the course of its remarks said: "The only question is whether McCall got the money, or did not." The defendant assigns error in this statement, construing it as eliminating the question whether there had been a meeting of minds of the parties in respect to the kind of policy to be issued and whether, accordingly, the policy was left with the insured merely for inspection or as a formal and final delivery, and thus limiting the case to the one issue of payment of premium. We find no error because the court in its main charge had already submitted the question of delivery, and manifestly its offending comment was directed and restricted to the point which it had just been asked to charge, and with respect to which, on affirming the point, it was making appropriate comments. We are satisfied that by this remark the jurors' minds were not drawn away from the two main issues of fact previously submitted under proper instructions.

The judgment is affirmed.