**UNITED STATES of America,**
**Plaintiff,**

v.

**Ralph D. JOHNSTON, Defendant.**
**Civ. No. 2515.**

United States District Court.
D. Minnesota, Third Division.
July 25, 1955.

George E. MacKinnon, U. S. Atty., and Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn., for plaintiff.

Luther M. Stalland of Grannis & Grannis, South St. Paul, Minn., for defendant.

BELL, District Judge.

This action was commenced by the plaintiff on a note held by the Commodity Credit Corporation.

There is no dispute but that the defendant Ralph D. Johnston in connection with obtaining a loan on stored

corn executed the note in question on March 6, 1950 in the principal amount of $640.20. The note bears interest at the rate of 3% with due date of July 31, 1950. On or about July 27, 1950 the Commodity Credit Corporation purchased the note and the original named payee, First National Bank of Cannon Falls endorsed and transferred the same to the Corporation.

■ The defense of payment was raised in Defendant's Answer and he testified in his own behalf upon that issue. With respect to such defense the defendant, of course, has the burden of proof. Harmon v. Adams, 120 U.S. 363, 7 S.Ct. 553, 30 L.Ed. 683; Holden v. Farwell, Osmun, Kirk & Co., 223 Minn. 550, 27 N.W.2d 641; Dunnell's Minnesota Digest, 3rd Ed., Vol. 14, Sec. 7443a. As stated in 8 Am.Jur., Bills and Notes, Sec. 1035:

"  *  *  *  The rule is elementary that the defendant in an action on a promissory note who asserts that it has been paid in part or in full, has the burden of proving such payment."

■■ There appears to be no question but that defendant did make a remittance in some form to the Goodhue County P. M. A. Office, which office was charged with processing this particular loan, and certain of the circumstances surrounding such remittance are not subject to controversy.

The evidence thus shows that some time prior to May 31, 1951, defendant inquired of the County office as to the amount which would be required to liquidate the loan. The local office on that day sent a letter to defendant which indicated the total of principal and interest due as of June 5th would be $664.-20, and specified that any check to be acceptable should be made payable to Commodity Credit Corporation.

Defendant returned this letter with the notation in his handwriting on the reverse side:

"ck. enclosed for corn loan."

The letter and whatever enclosure accompanied it was received in the County office on June 6, 1951, for a Repayment Record Form indicating receipt of a remittance of $664.20 was prepared on that day and a copy supplied to defendant. Such printed form bore a typewritten statement:

"Repayment accepted subject to collection of checks and verification as to principal and interest."

The basic disputed issue of fact in the case is the precise nature of the remittance made by defendant. Since the evidence negatived any indication that all or any part consisted of cash it must be assumed the remittance consisted of one or more checks.

The Plaintiff contends it was one check, defendant's personal check payable to Commodity Credit Corporation, in the amount of $664.20. On the other hand defendant claims the remittance consisted of two or more checks drawn by others which he as payee had endorsed in blank simply by signing his name as endorser. While defendant so testified he quite frankly admitted that he had no present recollection of the form of remittance and was unable to recall the amounts of such checks, their number or from whom he had obtained them. He based his testimony solely on the use of the plural form "checks" in the Repayment Record and his recollection that he had on occasion similarly endorsed checks for the payment of other obligations.

The testimony of the other witnesses and the documentary evidence in the case points more clearly to the conclusion that defendant's own personal check was received by the County office. The testimony indicates it was the invariable practice in that office to accept and receipt only for checks expressly made payable to Commodity Credit Corporation as indicated in the letter to defendant of May 31, 1951, making it the less likely that checks endorsed in blank, and defendant makes no claim they were otherwise endorsed, would have been so far acceptable as to result in preparation of the repayment record.

Secondly, it would be a remarkable coincidence if the defendant had avail-

able to him at the time a combination of checks made by others aggregating the precise amount required to liquidate the loan, $664.20, without the necessity of some supplemental payment in cash or by personal check. Especially is this true when the time element is considered for defendant was only advised of the amount due on May 31st and made his remittance by June 6, 1951.

Finally whatever merit there might otherwise be in defendant's reliance upon the use of the plural form "checks" in the Repayment Record as indicating a characterization of the particular remittance referred to, it cannot be relied upon here for the County office was operating under instructions to use that precise phraseology on all such records as is shown by the letter of instruction here in evidence.

Thus based upon all the circumstances of the case the conclusion is inescapable that the remittance made was in the form of defendant's personal check made payable to Commodity Credit Corporation in the amount reflected on the Repayment Record.

Of course, under the authorities the mere remittance of such check was not sufficient in itself to constitute payment for:

"* * * the presumption is that a check is received as a conditional payment, and until it is paid the debt remains." Dunnell's Minnesota Digest, 3rd Ed., Vol. 14, Sec. 7445.

As previously indicated defendant has the burden of proving payment, in this case that the remittance by check was completed by an actual collection and receipt of funds. In this respect the mere fact that defendant holds a receipt is not conclusive evidence of payment but is merely a fact to be considered with all the other evidence in the case. See Dunnell's, supra, Sec. 7456. This is particularly true where as here the receipt is conditional upon its face.

This is not a case such as New York Life Insurance Company v. Seifris, 3 Cir., 46 F.2d 391, which involved an unconditional receipt nor is it a case such as Gendreau v. North American Life and Casualty Company, 158 Minn. 259, 197 N.W. 257, another case cited by defendant, where there was an attempt to vary and contradict a written instrument on the claimed ground of mistake. Here there is nothing inconsistent between the Repayment Form and the fact of remittance by check and defendant still bears the burden of showing that the check was paid and in this the defendant has failed. For the evidence is ample and persuasive that the check in question was lost and never presented. It is not in the administrative offices where several searches were made for it without result. Defendant testified that no such check ever cleared his bank and the records of the bank where he maintained his checking account and which are here in evidence demonstrate that fact.

Since the check is lost no payment has ever been made and the debt remains. Nor is defendant absolved from the necessity of completing payment by resort to the principle of Pohl v. Johnson, 179 Minn. 398, 229 N.W. 555. For even if it be assumed that the loss of the check and the consequent failure to present the same was due to negligence of the plaintiff's employees and further that such failure could be ascribed to plaintiff the defendant has suffered no loss or prejudice thereby. Since the check was never presented or cleared the defendant has parted with nothing. Lacking the element of prejudice or loss to defendant the failure to present the check is immaterial and the case mentioned is not applicable.

The plaintiff being entitled to judgment the Court has made and will file separately herein its Findings of Fact, Conclusions of Law and Order for Judgment. An exception thereto is reserved to defendant.